[Civ. No. 43594. First Dist., Div. Four. Jan. 16, 1979.]

VERNON V. VALE et al., Plaintiffs and Appellants, v.
UNION BANK, Defendant and Appellant.

## COUNSEL

Nagle, Vale, McDowall & Cotter and John G. Schwartz for Plaintiffs and Appellants.

Donovan, Somers, Epman & Spear, Ronald J. Epman, Latham & Watkins, Joseph A. Wheelock and David F. Pursel for Defendant and Appellant.

## OPINION

**BRUNN, J.***—Union Bank (hereafter bank) appeals from a judgment awarding plaintiffs $7,779 damages for breach of contract. Plaintiffs cross-appeal from the judgment insofar as it fails to award them

*Assigned by the Chairperson of the Judicial Council.

exemplary damages. On the bank's appeal, we affirm. On the cross-appeal we reverse and remand.

I

THE BANK'S APPEAL

The plaintiff law firm is a professional corporation. Early in 1973 it entered into a written trust agreement with the bank to set up a pension and profit-sharing plan for the firm's employees. Under the agreement, the bank became trustee and the firm's board of directors appointed an administrative committee. The committee had broad powers; in particular it had the authority to direct the trustee to make investments.[1] The bank expressly agreed to follow such investment directives and was absolved from any liability for doing so.[2] The agreement also gave the

[1]The trust agreement provided:

10.4 "The Committee shall have the power and duty to do all things necessary or convenient to effect the intent and purpose of this Plan and not inconsistent with any of the provisions hereof, whether or not such powers and duties are specifically set forth herein and, not in limitation but in amplification of the foregoing, *shall have the power to construe the Trust Agreement, to determine all questions that shall arise hereunder,* including, particularly, directions to and questions submitted by the Trustee on all matters necessary for it properly to discharge its powers and duties. Decisions of the Committee made in good faith upon any matters within the scope of its authority shall be final and binding on the Company, the Trustee, participants, their beneficiaries, and all others. . . ."

10.5 *"The Committee is hereby granted full power and authority to direct the Trustee to invest and reinvest the Trust Fund or any part thereof in any manner that it deems advisable.* Without limiting the generality of the foregoing, the Committee may direct the Trustee to invest in bonds, notes, mortgages, commercial paper, preferred stock, common stocks, or other securities, rights, obligations or property, real or personal, including shares and certificates of participation issued by investment companies or investment trusts, shares or certificates of participation in commingled funds established by the Trustee and/or stocks, bonds or other obligations of the Employer." (Italics added.)

[2]Articles 10.6 and 12.1 of the trust agreement provided:

10.6 *"Upon instructions by the Committee to make any investment, the Trustee shall make such investment promptly, without any evaluation of the propriety thereof,* and shall retain such investment without any subsequent evaluation or recommendation to the Committee. Upon instruction by the Committee to sell, convey, exchange, transfer, pledge, mortgage or otherwise dispose of or encumber any real or personal property held by it, the Trustee shall comply promptly with such instructions without evaluation of the propriety thereof. *Under no circumstances shall the Trustee be liable for the making of any investment at the direction of the Committee,* for the retention of any such investment in the absence of directions from the Committee to dispose of the same, or for the disposal or encumbrance of any investment at the direction of the Committee. The Company agrees to indemnify and hold the Trustee harmless against any and all liabilities, costs

bank the right to resign as trustee if it was unwilling to comply with the committee's instructions.[3]

For a year and a half the firm contributed monies to the plan, the administrative committee directed investments, the bank followed the instructions. Some of the money was invested in the bank's common funds; some in treasury notes and emeralds. In July 1974, the committee instructed the bank to invest $15,000 of new funds in a limited partnership. The bank declined and told the committee that henceforth the bank would not honor any investment directions other than to invest in its common funds. In addition, the bank took the position that it would resign as trustee if the committee insisted on directing it to make the investment in the partnership.

The committee insisted that the bank follow the instructions. The bank resigned. As a result and as required by law the trust assets were sold, at a loss of $7,779. The loss was due to a decline in the value of the stocks in the bank's common funds. Both sides had been aware of this decline; they had discussed it during the month before the bank's resignation and had at that time agreed that the investment in common funds should not be liquidated at a loss because the stocks' value was likely to increase again.

Plaintiffs—the law firm and the new trustees—filed an action against the bank for breach of contract, fraud and breach of fiduciary duty. After a nonjury trial, the court below concluded that by resigning under these circumstances the bank breached the trust agreement and that as a consequence plaintiffs suffered damages in the amount we have mentioned.

The bank contends that it did not breach the agreement and that, in any event, the trial court used an improper measure of damages.

and expenses incurred by the Trustee as a result of acting, or omitting to act, in accordance with any directions of the Committee or in omitting to act in the absence of directions by the Committee to the Trustee." (Italics added.)

"12.1. The duties of the Trustee shall be confined to safeguarding and valuing Trust assets, investing and reinvesting the Trust Funds, as provided in Article 11, and carrying out the directions of the Committee. . . ."

[3] In this respect the trust agreement provided: "12.5. The Trustee may resign at any time upon written thirty (30) days' notice to the Company and the Committee, *provided that upon receipt of instructions or directions from the Company or the Committee with which the Trustee is unable or unwilling to comply, the Trustee may resign upon written notice* to the Company and the Committee, given within a reasonable time, under the circumstances then prevailing. . . ." (Italics added.)

A. *Breach of Contract.*

 The bank urges that the agreement gave it an unqualified right to resign. This contention is unmeritorious for at least two reasons.

 First, a contract must be viewed as a whole and construed to give meaning to all its parts. (*People* ex. rel. *Dept. of Parks and Recreation* v. *West-A-Rama, Inc.* (1973) 35 Cal.App.3d 786, 793 [111 Cal.Rptr. 197]; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.* (1942) 20 Cal.2d 751, 760 [128 P.2d 665]; *Randall* v. *Bank of America* (1941) 48 Cal.App.2d 249, 252 [119 P.2d 754]; Civ. Code, § 1641.) Here, the trust agreement used the clearest possible language to give the administrative committee full power and authority to direct investments. The only interpretation that achieves harmony between this provision and the resignation clause and that is consistent with the purpose of the instrument as a whole is that the right to resign based on unwillingness to follow the committee's instructions must be exercised in good faith and in accordance with the trustee's fiduciary obligations. A contrary interpretation would be inconsistent with the bank's fiduciary duties as a trustee and would render illusory the trustee's obligation to accept investment directions.

 Secondly, a covenant of good faith and fair dealing is implied in every contract. It requires "each party not to do anything which will deprive the other parties thereto of the benefits of the contract . . . [and] to do everything that the contract presupposes that he will do to accomplish its purpose." (*Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367]; *Nystrom* v. *First Nat. Bank of Fresno* (1978) 81 Cal.App.3d 759, 766 [146 Cal.Rptr. 711]; *Gherman* v. *Colburn* (1977) 72 Cal.App.3d 544, 564 [140 Cal.Rptr. 330] (stating that this principle is "axiomatic"); *Zurn Engineers* v. *State of California* ex rel. *Dept. Water Resources* (1977) 69 Cal.App.3d 798, 833 [138 Cal.Rptr. 478]; *Steinmeyer* v. *Warner Cons. Corp.* (1974) 42 Cal.App.3d 515, 519 [116 Cal.Rptr. 57]; *Berkeley Lawn Bowling Club* v. *City of Berkeley* (1974) 42 Cal.App.3d 280, 286-287 [116 Cal.Rptr. 762]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 576, p. 493.) Such a covenant is particularly appropriate in the case of a trustee who "[i]n all matters connected with his trust . . . is bound to act in the highest good faith toward his beneficiary. . . ." (Civ. Code, § 2228.) Therefore, the bank had to exercise its right to become unwilling to follow investment instructions and to resign as trustee in good faith and in a manner that dealt fairly with the plaintiffs.

The evidence clearly shows that the bank failed to act in good faith. It tried to change the rules of the game by insisting that henceforth it would

only make investments in the bank's common funds. The bank coupled this insistence with a threat to resign, a threat that would cause plaintiffs immediate financial loss from the liquidation of the earlier investment in the common funds and that would require plaintiffs to give up the right that they had expressly bargained for, namely the right to have the administrative committee direct investments. One of the major reasons that plaintiffs set up the pension and profit-sharing plan with this particular bank was the bank's willingness to accept a "directed trust," that is, one that would permit plaintiffs to direct the investments. The bank carried out its threat. This evidence fully supports the conclusion that the bank acted in bad faith and for improper purposes, namely to coerce plaintiffs into investing exclusively in the bank's own pooled funds.

The bank's conduct was not only an attempt to abrogate the rights of plaintiffs under the trust agreement, but a manifestation of total disregard for the interests of the beneficiaries, who stood to lose a substantial part of the pension fund as a result of the forced liquidation. The bank's assertion that the decision was made in the exercise of its independent judgment as fiduciary is wholly untenable in light of the facts (a) that the bank expressly refused to make any investments other than in its common funds, and (b) that the trust agreement is crystal clear that the bank, as trustee, was not to evaluate or exercise any independent judgment as to the propriety of investments directed by the administrative committee. The trial court properly characterized the bank's conduct as unreasonable[4] and outrageous. (Cf., e.g., *Berkeley Lawn Bowling Club* v. *City of Berkeley, supra*; *Steinmeyer* v. *Warner Cons. Corp., supra.*)

B. *Damages.*

 The trial court awarded plaintiffs $7,779, based upon the difference between the sale price of the trust's common funds at the time of resignation and the cost of acquiring them. The bank contends that this measure of damages was improper, since "there is no causal connection between any act of UNION BANK and the value of the common funds at the time of liquidation." Without citing any authority to support its position, the bank baldly asserts that the act of resigning did not cause the damage to plaintiffs, since the bank had no control over the stock market at the time of liquidation.

---

[4]The trial court interpreted the trust agreement to require that the bank's resignation must be based on reasonable grounds and held that the bank acted unreasonably under the circumstances. The result is the same whether couched in terms of reasonableness or good faith.

This argument is without merit. Civil Code section 3300 provides that the measure of damages for the breach of an obligation arising from contract shall be "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby" or which "would be likely to result therefrom." While it is axiomatic that there must be a causal connection between the act complained of and the loss or injury (*J. Breuner Co.* v. *Western Union Tel. Co.* (1930) 108 Cal.App. 243, 255 [291 P. 445]; 1 Witkin, Summary of Cal. Law, *op. cit., supra,* § 638, p. 542), it is readily apparent that the forced sale of Union Bank funds at a loss of $7,779 to the trust was a direct and proximate result of the bank's resignation. The fact that the bank had no control over the market value of the funds is totally irrelevant to the issue of whether the forced sale was a proximate consequence of the bank's breach.

The bank contends that the true measure of damages for the breach should be the monetary damage suffered by plaintiffs as the result of not being able to make the $15,000 investment in the limited partnership. Since plaintiffs were eventually able to make the $15,000 investment, the argument runs, no damage occurred. This argument would have merit if the only breach were the bank's refusal to honor plaintiffs' direction. However, the bank went one step further and resigned its office, causing the liquidation of trust assets and the loss described above.

The bank also contends that plaintiffs should have mitigated damages by repurchasing the securities that had been sold as a result of the bank's resignation. The bank misconceives the mitigation rule. The loss occurred at the time of the forced sale; had plaintiffs invested the proceeds of the sale at a further loss, they would not have been entitled to additional damages. Similarly, a successful investment of the proceeds does not reduce damages. The trial court properly determined the loss as measured in terms of the diminution in value at the time of the forced sale, unaffected by subsequent changes in value. (Cf., *Royer* v. *Carter* (1951) 37 Cal.2d 544 [233 P.2d 539]; *Eichler Homes, Inc.* v. *Underwriters at Lloyds, London* (1965) 238 Cal.App.2d 532, 538 [47 Cal.Rptr. 843]; *Capaldi* v. *Levy* (1969) 1 Cal.App.3d 274, 282 [81 Cal.Rptr. 629].)

## II

### THE CROSS-APPEAL

Plaintiff sought exemplary damages. The trial court concluded it had no authority to award such damages, although it would award them if it

could. The trial court wrote: "The Court hesitates to use some of the descriptive words that readily come to mind in describing the Trustee's actions in telling the Committee that you either invest in our common fund or we will resign, sell you out and cause you a loss, but at a minimum it is outrageous behavior and if the Court felt that it had the power to order punitive damages, under the circumstances of this case, it certainly would."

Plaintiffs' complaint included causes of action for breach of contract, fraud in its inducement and violation of the trustee's fiduciary obligations. On the contract cause of action the trial court ruled for plaintiffs and correctly ruled that punitive damages are not recoverable for breach of contract. (*Roam* v. *Koop* (1974) 41 Cal.App.3d 1035 [116 Cal.Rptr. 539]; Civ. Code, § 3294; 1 Witkin, *op. cit., supra,* § 644, p. 548.) The trial court decided the fraud-in-the-inducement claim against plaintiffs and this result is supported by substantial evidence.[5] However, the trial court found it unnecessary to rule on the claimed violation of fiduciary duties.

The evidence we have discussed and the law applicable to the fiduciary obligations of a trustee would permit a decision for plaintiffs on this cause of action. "A trustee may not use the influence which his position gives him to obtain any advantage from his beneficiary." (Civ. Code, § 2231.) "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." (Civ. Code, § 2228.)

Exemplary damages may be awarded against a trustee who breaches his fiduciary duties where there is evidence of oppression, fraud or malice. (*Rivero* v. *Thomas* (1948) 86 Cal.App.2d 225, 239 [194 P.2d 533]; see also Civ. Code, § 2234 which states that a breach of a trustee's fiduciary obligations is a fraud against the beneficiary.) Compare *Richardson* v. *Employers Liab. Assur. Corp.* (1972) 25 Cal.App.3d 232 [102 Cal.Rptr. 547], holding that exemplary damages may be awarded against an insurance company for violating its duty to settle claims in good faith. The court said: "Defendant contends that this is an action for damages for breach of contract and that puniitve [*sic*] damages are not authorized. As

[5]Plaintiffs' theory was that at the time the trust agreement was entered, the bank represented that it would honor plaintiffs' directions to make investments, when in fact the bank had no intention of doing so. The evidence showed, however, that the bank fully complied with the directions for about one and a half years.

we have already pointed out, this is an erroneous assumption; the suit rests upon the tortious breach by the insurer of an obligation imposed by law, to deal fairly and in good faith with its own insured." (*Id.,* at p. 244.)

The leading case on the fundamental distinction between actions for breach of contract, where punitive damages are not allowed, and action for violations of statutory duties, where such damages may be awarded, is *Ward* v. *Taggart* (1959) 51 Cal.2d 736 [336 P.2d 534]. There the action was brought against a real estate broker to recover an illicit profit. Defendants argued that an unjust enrichment claim was contractual in nature and could not give rise to exemplary damages. The court rejected this contention. It held that the word "contract" in Civil Code section 3294 (the section authorizing exemplary damages "for the breach of an obligation not arising from contract") is used "in its ordinary sense to mean an agreement between the parties, *not an obligation imposed by law* despite the absence of any such agreement. Taggart's obligation does not arise from any agreement between him and plaintiffs. It arises from his fraud and violation of statutory duties." (51 Cal.2d at p. 743; italics added.) As in *Taggart* and *Richardson, supra,* a trustee's violation of fiduciary duties breaches an obligation imposed by law.

In short, the trial court should have determined (1) whether the bank violated its fiduciary obligations and, in the event of such violation, (2) whether to award exemplary damages under Civil Code section 3294, which authorizes such awards in cases of fraud, malice or oppression. ■ The latter term "means subjecting a person to cruel and unjust hardship in conscious disregard of his rights." (*Richardson, supra,* at p. 246.) As to the applicable test see also *Schroeder* v. *Auto Driveaway Co.* (1974) 11 Cal.3d 908, 922 [114 Cal.Rptr. 622, 523 P.2d 662], where the court said: "The jury in the present case could reasonably infer that *defendants acted in callous disregard of plaintiffs' rights,* knowing that their conduct was substantially certain to vex, annoy, and injure plaintiffs. *Such behavior justifies the award of punitive damages.*" (Italics added.)

The court's failure to find on these issues requires reversal. ■ "It is settled that, unless waived, express findings are required on all material issues raised by the pleadings and the evidence, and failure to find on a material issue will ordinarily constitute reversible error. [Citations.] Where the complaining party has introduced substantial evidence to support a finding in his favor on such an issue, reversal is compelled. [Citations.]" (*Guardianship of Brown* (1976) 16 Cal.3d 326, 333 [128 Cal.Rptr. 10, 546 P.2d 298].)

We do not suggest that the trial court should or should not award exemplary damages. This is a matter wholly within its discretion. (*Sullivan* v. *Matt* (1955) 130 Cal.App.2d 134, 143-144 [278 P.2d 499].)

The judgment is reversed with directions to the trial court to proceed in a manner consistent with the views expressed herein with respect to plaintiffs' cause of action for breach of the trustee's fiduciary duties. In all other respects the judgment is affirmed. Plaintiffs to recover costs on appeal.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied February 2, 1979, and the petition of the defendant and appellant for a hearing by the Supreme Court was denied March 29, 1979. Clark, J., Richardson, J., and Manuel J., were of the opinion that the petition should be granted.